**In re ANNEXATION OF SLATERVILLE et al. TO TOWN OF FAIRBANKS.**

No. 6032.

United States District Court. D. Alaska Fourth Div. Fairbanks.

April 18, 1949.

662

Collins & Clasby, by Charles J. Clasby, all of Fairbanks, Alaska, for petitioner.

Southall R. Pfund, of San Francisco, Cal., and Julien A. Hurley, of Fairbanks, Alaska, for protestants.

PRATT, District Judge.

Herein the following abbreviations will be used, to wit: A.C.L.A. shall indicate Alaska Compiled Laws Annotated, 1949; C.L.A. '33 shall indicate Compiled Laws of Alaska, 1933; C.L.A. '13 shall indicate Compiled Laws of Alaska, 1913; S.L.A. shall indicate Session Laws of Alaska.

The above cause is a proceeding to annex to the City of Fairbanks, Alaska, territory that is contiguous to it. Protestants assert that the laws of Alaska upon the subject are invalid because they grant to the Judge of the District Court powers which are purely legislative, and also that such laws are so vague and indefinite as to be invalid.

Section 2419, C.L.A. '33; Section 16-1-22, A.C.L.A.; Section 51, Chapter 97, S.L.A. '23 provides that any city desiring to annex contiguous territory shall file in the District Court a "petition signed by a majority of the owners of substantial property interests in land or possessory rights in land, tidelands or improvements upon land or tideland within the limits of the territory so proposed to be annexed * * * and stating the number of inhabitants therein, as well as the number of owners of property therein situate and such other facts as the court may require. * * * The court shall make diligent inquiry as to the reasonableness and justice of the petition and if the court be satisfied from proofs and evidence that no private rights will be injured by granting the petition and if it is just and reasonable that the annexation take place, the court shall, unless it be shown that the petition is not bona fide or that one or more of the signers thereto are not owners of substantial property rights as herein provided or fails to comply with the requirements of this act in any other respect, order an election."

The Protestants assert that the powers in said section granted to the District Court to determine who are owners of substantial property interest in land, etc.; determining such other facts as the Court may require; determining the reasonableness and justice of the petition; determining whether or not private rights will be injured by granting the petition; determining whether or not it is just and reasonable that the annexation shall take place; determining whether the petition is bona fide or not; determining whether one or more of the signers are not owners of substantial property rights; or determining whether the petition fails to comply with

the requirements of said Chapter 97, are legislative in character. They further assert that such being legislative matters, there was no power in Congress or the Legislature of the Territory of Alaska to delegate those powers to the District Judge.

That such matters are legislative rather than judicial was decided in the case of the Town of Fairbanks, Alaska, v. Barrack, 9 Cir., 1922 (from Alaska), 282 F. 417.

Protestants have cited a number of cases decided by state courts whose constitutions forbade the mixing of legislative and judicial powers, 16 C.J.S., Constitutional Law, § 104, page 292. It is not thought that such decisions are of any assistance in deciding the present case because the situation of Alaska is so different.

The last paragraph of Section 3, Article IV of the Constitution of the United States provides:

"The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; and nothing in this Constitution shall be so construed as to Prejudice any Claims of the United States, or of any particular State."

A somewhat similar provision is made by clause 17 of Section 8 of Article I of said Constitution, with reference to the District of Columbia.

In Binns v. United States (from Alaska), 194 U.S. 486, at page 491, 24 S.Ct. 816, at page 817, 48 L.Ed. 1087, the Court said:

"It must be remembered that Congress, in the government of the territories as well as of the District of Columbia, has plenary power, save as controlled by the provisions of the Constitution; that the form of government it shall establish is not prescribed, and may not necessarily be the same in all the territories. We are accustomed to that generally adopted for the territories, of a quasi state government, with executive, legislative, and judicial officers, and a legislature endowed with the power of local taxation and local expenditures; but Congress is not limited to this form. In the District of Columbia it has

adopted a different mode of government, and in Alaska still another. It may legislate directly in respect to the local affairs of a territory, or transfer the power of such legislation to a legislature elected by the citizens of the territory. It has provided in the District of Columbia for a board of three commissioners, who are the controlling officers of the District. It may entrust to them a large volume of legislative power, or it may, by direct legislation, create the whole body of statutory law applicable thereto."

In Keller et al., constituting the Public Utilities Commission of the District of Columbia, v. Potomac Electric Power Company et al., 261 U.S. 428, 43 S.Ct. 445, 67 L.Ed. 731, the Public Utilities Commission for the District was required to value the property of every public utility within the district, and prepare a valuation thereof.

On page 440 of 261 U.S., on page 447 of 43 S.Ct., the Court said: "What is the nature of the power thus conferred on the District Supreme Court? Is it judicial or is it legislative? Is the court to pass solely on questions of law, and look to the facts only to decide what are the questions of law really arising, or to consider whether there was any showing of facts before the commission upon which, as a matter of law, its finding can be justified? Or has it the power, in this equitable proceeding, to review the exercise of discretion by the commission and itself raise or lower valuations, rates, or restrict or expand orders as to service? Has it the power to make the order the commission should have made? If it has, then the court is to exercise legislative power, in that it will be laying down new rules, to change present conditions and to guide future action, and is not confined to definition and protection of existing rights."

On page 442 of 261 U.S., on page 448 of 43 S.Ct., the Court further said: "We cannot escape the conclusion that Congress intended that the court shall revise the legislative discretion of the commission * * *.

"Can the Congress vest such jurisdiction in the courts of the District of Columbia? By the Constitution, clause 17, sec-

tion 8, article I, Congress is given power 'To exercise exclusive legislation in all cases whatsoever, over' the District of Columbia. * * * it possesses a dual authority over the District, and may clothe the courts of the District, not only with the jurisdiction and powers of federal courts in the several states, but with such authority as a state may confer on her courts. * * * In Prentis v. Atlantic Coast Line Co., supra, [211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150], we held that, when 'a state Constitution sees fit to unite legislative and judicial powers in a single hand, there is nothing to hinder so far as the Constitution of the United States is concerned.' Dreyer v. Illinois, 187 U.S. 71, 83, 84, 23 S.Ct. 28, 47 L.Ed. 79.

"It follows that the provisions in the law for a review of the Commission's proceedings by the Supreme Court of the District and for an appeal to the District Court of Appeals are valid. * * *"

■ It is clear from the above that Congress had power to delegate legislative functions to the courts of Alaska. It becomes necessary, therefore, to ascertain whether or not Congress gave the right to the Territorial Legislature to delegate legislative powers to the Courts of Alaska.

By an Act of Congress approved June 6, 1900, Chapter 786, 31 Stat. pages 321 to 552, "An Act Making further provision for a civil government for Alaska, and for other purposes," Congress provided in Chapter 21, § 198 et seq., page 520, for the incorporation of towns. It is very similar to the Act under which the present proceedings were commenced. It provided for the petition to be presented to the Judge of the District Court; that after notice "the court shall hear objections to the incorporation made by interested parties, and, if satisfied that the public interest require the incorporation, by order, may make changes in the boundaries, and set forth the name thereof and give due notice of an election for the purpose of determining whether the same shall be incorporated."

Said Chapter further provides that: "Every elector shall be the owner of substantial property interests in the corporation."

It will thus be seen that the election board was given the legislative duty of determining what constituted a substantial property interest in order to determine whether a person was entitled to cast a vote. It will also be seen from the above that Congress delegated to the Judge of the District Court the legislative power of determining whether or not public interest required the incorporation. This is practically the same as the provisions of law under which the present annexation is sought, as obviously the Court would not be satisfied that public interest required the incorporation if it was going to damage private interest and not be just and fair.

Under the above-mentioned Act of June 6, 1900, the Town of Fairbanks was incorporated by the District Court in 1903.

By Act of Congress approved April 28, 1904, 33 Stat. 529; Section 624, C.L.A. '13, the Act approved June 6, 1900, was amended. It provided that the petition presented to the Judge for incorporation should show "such other facts as may tend to show good grounds for such incorporation. * * * At the time and place fixed for considering said petition the judge shall give a reasonable hearing to those who are in favor of and to those who are opposed to the same; and if he is satisfied that it is for the best interest and welfare of the community to be incorporated as a town he shall, by an order, so adjudge; and he may, by the order, change or modify the proposed boundaries. He shall also, by said order, designate * * * the time and place when and where an election shall be held to determine whether the people of the community desire to be incorporated; * * *".

This last-mentioned Act of Congress has never been repealed directly, and was in full force and effect when provisions were made by the Organic Act for Alaska for a legislature and Territorial government.

The Organic Act of Alaska, approved August 24, 1912, 37 Stat. 512, 48 U.S.C.A. §§ 23, 24, Sections 463 and 464, C.L.A. '33; 1 A.C.L.A., Page 50, Section 3, provide:

Sec. 463: "That except as herein provided all the laws now in force in Alaska

shall continue in full force and effect until altered, amended, or repealed by Congress or by the legislature: * * *"

Sec. 464: "* * * the authority herein granted to the legislature to alter, amend, modify, and repeal laws in force in Alaska shall not extend to the customs, internal-revenue, postal, or other general laws of the United States or to the game, fish, and fur-seal laws and laws relating to fur-bearing animals of the United States applicable to Alaska, or to the laws of the United States providing for taxes on business and trade, or to the Act entitled 'An Act to provide for the construction and maintenance of roads, the establishment and maintenance of schools, and the care and support of insane persons in the District of Alaska, and for other purposes', approved January twenty-seventh, nineteen hundred and five, and the several Acts amendatory thereof: Provided, further, That this provision shall not operate to prevent the legislature from imposing other and additional taxes or licenses. And the legislature shall pass no law depriving the judges and officers of the district court of Alaska of any authority, jurisdiction, or function exercised by like judges or officers of district courts of the United States."

Section 9 of said Organic Act, 37 Stat. 514; page 55, A.C.L.A., Vol. 1; Section 475, C.L.A. '33; 48 U.S.C.A. §§ 77, 78, provide:

"The legislative power of the Territory shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States * * *."

Then follow specific limitations as to subjects to be dealt with by the legislature, none of which are relevant to this inquiry.

The Act of Congress approved August 29, 1914, 38 Stat. 710; Vol. 1, A.C.L.A., page 61; Sec. 486, C.L.A. '33; 48 U.S.C.A. §§ 91, 121, provides that nothing in the act creating the legislative assembly of Alaska: "* * * shall be so construed as to prevent the courts * * * from enforcing * * * all laws passed by the Legislature within the power conferred upon it, the same as if such laws were passed by Congress, nor to prevent the Legislature passing laws imposing additional duties, not inconsistent with the present duties of their respective offices, upon the Governor, marshals, deputy marshals, clerks of the District Court, and United States Commissioners acting as justices of the peace, probate judges, recorders and coroners, * * *."

Inasmuch as Congress, in its Acts of June 6, 1900, and April 28, 1904, delegated legislative action to the District Court relative to incorporating towns, fixing the boundaries thereof and deciding whether it was just and proper for annexations to take place, it definitely proclaimed that the delegation of such powers to the district courts were proper matters of legislation. It being proper for Congress to legislate upon such matters, the right to likewise legislate upon those matters by the district court was included in the provisions of the Organic Act above-mentioned, giving to the Territorial Legislature the right to amend "all the laws of the United States * * * in force in Alaska." Section 9 of said Organic Act also provided that "the legislative power of the Territory shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States," and thereby again authorized the legislature to delegate such annexation powers to the courts.

The Amendment of August 29, 1914, supra, forbidding courts to refuse to enforce laws passed by the legislature within the power conferred upon them by the Organic Act strengthens, rather than diminishes, the force of the argument that the Territorial Legislature could delegate legislative powers to the district courts in regard to the annexation of territory to municipalities. The fact that said Amendment of August 29, 1914, also specially mentions that the legislature may pass laws imposing additional duties upon certain officials (district judges not being mentioned) does not seem to throw any light upon the subject in controversy, inasmuch as the Organic Act itself had already given the legislature the power to delegate legislative actions to the district court in regard to the annexation of territory to municipalities, and there was no necessity to again mention that power.

■ The power granted to the District Judge to modify the boundaries of a proposed municipality in an incorporation proceeding was broad enough to have permitted him to entertain a petition to modify the boundaries of a municipality so as to include new adjacent territory. Chap. 47, S.L.A. '21 and Chap. 97, S.L.A. '23 were mere amendments of the Act of Congress of April 28, 1904, and within the powers granted by the Organic Act.

By Act of Legislature approved May 7, 1921, c. 47, S.L.A. '21, the Legislature provided for the annexation of territory adjoining a municipal corporation. It provided for a petition signed by the common council of the town to be filed in the office of the Commissioner and ex-officio Recorder of the district in which the town is situated, and for a hearing thereon after notice, and that if the Commissioner was satisfied that proper notice had been given, and that the annexation of such territory to the town "will be to its interest and will cause no manifest injury to the persons owning real estate in the territory sought to be annexed," he shall make an order declaring the annexation.

Thus we have the Territorial Legislature definitely delegating to the Commissioner a legislative power practically the same as that involved in the present case.

In the case of the Town of Fairbanks v. Barrack, 282 F. 417, the Circuit Court of Appeals for the Ninth Circuit upheld said Territorial Act of May 7, 1921. The Court said:

Page 420 of 282 F.: " * * * The better reasoning is that the creation of municipalities, and the defining of the extent of the boundaries thereof, involve the exercise of legislative, not judicial, power. * * *"

Page 421 of 282 F.: " * * * It would by no means be beyond the power of Congress to give the District Court in Alaska power to revise the whole proceeding, or to give the Legislature of the territory power to confer such authority upon the courts. Forsyth v. Hammond, supra [7 Cir., 71 F. 443]. But, even upon the assumption that Congress has granted to the Legislature of Alaska general power to vest legislative duties upon judicial officers, we are not clear that, by section 8 of chapter 47, the judicial investigation authorized may extend farther than to review those questions which are legal, and not legislative in character."

The Circuit Court of Appeals, 9th Circuit, definitely held in Town of Fairbanks v. Barrack, supra, that Congress had the power to and had given the Territorial Legislature power to delegate legislative power in regard to annexing adjoining territory to municipal corporations.

It is therefore positive authority that Chapter 97, S.L.A. '23 is valid in delegating such powers to the District Judges.

Sec. 20 of the Organic Act of Alaska, 37 Stat. 518, 48 U.S.C.A. § 90; Sec. 4-3-4, A.C.L.A.; provides:

"All laws passed by the Legislature of the Territory of Alaska shall be submitted to the Congress by the President of the United States, and, if disapproved by Congress, they shall be null and of no effect."

Although Chapter 97, S.L.A. '23, the annexation law now in force in Alaska, was passed in 1923, Congress has never disapproved it.

In Territory of Alaska v. First National Bank, 9 Cir., 22 F.2d 377, at page 379, it was held:

" * * * Fortifying the inference to be drawn from the fact that escheats is not named as one of the prohibited fields, and though passed in 1921, Congress has not disapproved the law, is the consideration that the devolution of property and its escheat are customarily the subject of local legislation; and, in view of the general practice in respect to territories, it is not to be presumed or lightly inferred that Congress intended to discriminate against Alaska. Christianson v. King County, 9 Cir., 203 F. 894, 902."

■ As annexation of adjacent land to municipal corporations is customarily the subject of local legislation and as Congress has never disapproved of Chapter 97, S.L.A. '23, the last-mentioned case becomes strong authority in favor of the validity of said Chapter 97.

The petition for annexation in this case is also attacked by the Protestants upon the ground that the law relative thereto is

vague, indefinite, and uncertain, a violation of the Fifth Amendment of the Constitution of the United States, and of the Organic Act of the Territory of Alaska, and further that the petition fails to state a cause of action.

Applicable Alaska law, Chapter 97, S. L.A. '23; Sec. 2419, C.L.A. '33; Sec. 16-1-22, A.C.L.A., provides that the petition shall be signed by a majority of the "owners of substantial property interests in land or possessory rights in land, tidelands or improvements upon land or tideland within the limits of the territory so proposed to be annexed."

Attached to the petition filed in this case are sheets of paper for the petitioners to sign. The heading states: "That we have read and understand the foregoing petition, hereby consent to the annexation therein requested and are persons qualified to so petition:" There are headings as follows:

On the other hand, the owners of a mere contract to purchase land might or might not be the owner of a substantial interest. If the vendee had fully performed his part of the contract and was then entitled to a deed from the vendor-owner, the vendee would be an equitable owner and the owner of a substantial interest in the land. Otherwise he would not be such an owner.

A wife, claiming to be a co-owner in land would not be a co-owner merely by virtue of the marriage, as Alaska is not a community property Territory. She would be a co-owner only if she could qualify as such by facts other than the marriage relation.

■ In this case, the petition alleges that the signers of the petition are owners of substantial property interests in land. A demurrer has been filed, which admits

| "Signature | Property Interest | Where Recorded or Found | Description (full) | Date Acquired (Comments)" |
| --- | --- | --- | --- | --- |

An examination as to the interest of those signing the petition shows that they were either owners, co-owners, or holding under a contract of sale. For the purposes of this case, then, there will be no necessity of making any determination relative to interest in possessory rights in land, tidelands or improvements upon lands or tidelands.

■ The owner of any undivided fee simple interest or of an entirely vested equitable title would be the owner of a substantial interest in land without any vagueness or uncertainty.

the matters plead. If those holding merely under a contract of sale do not have vested equitable interests, or if those claiming to be co-owners are not such co-owners, the way to raise the question by Answer is open to the Protestants.

■ Therefore, it appears that the law under which this proceeding is being prosecuted is not void for vagueness, indefiniteness and uncertainty, and is not invalid as delegating legislative duties to the District Court.

A cause of action is stated and the Demurrer should be overruled.