George D. Y. WOO, Plaintiff,

and

The Territory of Alaska, as represented by the Board of Liquor Control, Plaintiff in Intervention,

v.

CITY OF ANCHORAGE, a municipal corporation, Anton Anderson, as Mayor thereof, I. M. C. Anderson, Brad Phillips, Roy Nigh, Frank M. Reed, Jack Davis, and Hewitt Lounsbury, as members of and constituting the City Council thereof, George Shannon, as City Manager thereof, and John C. Flanigan, as Chief of Police thereof, Defendants.

Civ. A. No. A–13407.

District Court, Alaska, Third Division, Anchorage.

Aug. 30, 1957.

John E. Manders (of Manders, Butcher, Dunn & Connolly), Anchorage, Alaska, for plaintiff.

J. Gerald Williams, Atty. Gen. of Alaska, and Robert J. Annis, Asst. Atty. Gen., Juneau, Alaska, for intervenor, Territory of Alaska.

James M. Fitzgerald, City Atty., and L. Eugene Williams, Asst. City Atty., Anchorage, Alaska, for defendants.

TOLIN, District Judge.

Plaintiff George D. Y. Woo, who possesses an Alaskan territorial license for the operation of a liquor dispensing business, seeks in this action to enjoin as invalid the enforcement of an ordinance of the City of Anchorage which would impose upon him the additional burden of securing a municipal liquor license. The Territory of Alaska, as represented by the Board of Liquor Control, has intervened as a plaintiff in order to urge that the municipal licensing ordinance constitutes an illegal restriction upon the exclusive licensing power of the territorial Board.

Woo is the owner and operator of a restaurant know as the "Rice Bowl", located at 232 Fifth Avenue in the City of Anchorage. On or about January 9, 1957, he applied to the Board of Liquor Control for the issuance to him of a territorial beverage dispensing liquor license in accordance with the laws of the Territory of Alaska. Approximately twenty days later Woo applied to the Anchorage City Council for approval of the territorial application and for the issuance to him of the additional municipal liquor license required by the City ordinance. On March 12, 1957, after a hearing, the City Council refused to approve the application. Thereafter, on March 16, 1957, Woo's application to the Board of Liquor Control was approved by that body and a territorial license for carrying on a liquor dispensing business at the "Rice Bowl" was issued to him. Woo has subsequently been advised by the Anchorage City Attorney that, since the City Council has refused to issue a municipal license, any attempt by Woo to dispense intoxicating liquors as authorized by his territorial license would result in prosecution under the Anchorage Code of Ordinances.

Ordinance 1031, amending Article 4, Chapter 4, Anchorage General Code, provides in pertinent part as follows:

"Sec. 4–3. No person shall operate an intoxicating liquor establishment under a business name or style or individual name without first obtaining a license therefor from the city. * * *

"Sec. 4–6(b) (1). No application for an intoxicating beverage dispensary license shall be accepted or approved for any location not licensed at the time of application where the total of licensed beverage dispensaries in the aggregate at any one time would exceed two licenses for each fifteen hundred of population in the city. * * *

"Sec. 4–6(b) (3). Notwithstanding the foregoing provisions of this section, the council shall refuse to issue any type of license to any applicant if, in the opinion of the council, the number of licenses already granted for the particular block, section or area are adequate for the reasonable needs of the city. * * *"

The ordinance was enacted pursuant to, and derives its authority from, an enactment of the legislature of Alaska, 35–4–18, A.C.L.A.1949, which provides as follows:

"§ 35–4–18. *Municipal regulations.* Incorporated municipalities, in the Territory of Alaska, may, by ordinance duly enacted, provide such additional rules and regulations governing the barter, sale and possession of intoxicating liquor within such municipalities as may be deemed necessary to the orderly conduct of the business of selling intoxicating liquor; provided, however, that such ordinance or ordinances thus enacted shall not be inconsistent with this Act, and that no municipality shall impose any additional taxes."

The stipulated facts disclose that, under the license—population ratio formula contained in the ordinance, Woo is not entitled to a municipal liquor license. If the territorial legislature had the power to grant to municipalities concurrent licensing power, and if the ordinance is within that authorization, the plaintiffs are entitled to no relief.

The power to "make all needful Rules and Regulations respecting the Territory * * * belonging to the United States" has been lodged in Congress by the federal Constitution, Article 4, Section 3. Congress could have legislated directly respecting the manufacture and sale of intoxicating liquors in Alaska,[1] or it could delegate to the territorial legislature power to enact laws regulating the liquor traffic. But, of course, if Congress did delegate such authority to the territorial legislature, that body must discharge its power strictly within the limits stated in Bordenelli v. United States, 9 Cir., 1956, 233 F.2d 120 and Boggess v. Berry Corp., 9 Cir., 1956, 233 F.2d 389. Congress gave to the legislature of Alaska permission to regulate the liquor traffic only in a specified manner. Unless, therefore, an express and specific direction to the territorial legislature can be pointed out whereby Congress permitted that body to subdelegate concurrent licensing authority to municipal corporations, the power did not exist, and any attempt to do so would be void.

As was pointed out by Judge Fee in Bordenelli, Congress enacted legislation in 1934 which marks the extent of the power of the territorial legislature to regulate and control liquor traffic as follows [233 F.2d 122]:

"No spirituous or intoxicating liquors shall be manufactured or sold in the Territory of Alaska except under such regulations and restrictions as the Territorial Legislature shall prescribe, and the Legislative power and authority conferred upon the Legislative Assembly of the Territory of Alaska"

by the acts organizing the territory and general legislation relating to the structure and powers of the government of the area

" * * * shall be, and is, extended to include any legislation pertaining to the manufacture or sale of spirituous or intoxicating liquor within the said Territory, and any provision contained in the said sections, in conflict herewith, is expressly repealed: *Provided, however,* That the Legislature of the Territory of Alaska shall have full power and authority to delegate the powers conferred to any board or

---

1. Nelson v. United States, C.C.D.Or.1887, 30 F. 112, affirming D.C.D.Alaska 1886, 29 F. 202. Cf. Binns v. United States, 1904, 194 U.S. 486, 24 S.Ct. 816, 48 L. Ed. 1087.

commission designated or created by the legislature for such purpose, which powers shall include the power to make rules and regulations governing the manufacture, barter, sale, or possession of spirituous or intoxicating liquors in the Territory of Alaska, to prescribe the qualifications of those who are to engage in the manufacture, barter, sale, or possession of intoxicating liquors in the said Territory, and to prescribe license fees and excise taxes therefor * * *." 48 U.S.C.A. § 292.

On the same day, Congress adopted another section, which reads:

"The act of the Territorial Legislature of Alaska entitled 'An Act to create the board of liquor control and prescribe its powers and duties', approved May 4, 1933, contained in the Session Laws of Alaska, 1933, being chapter 109 thereof, at pages 193–194, be, and the same is, ratified and approved, and the board thereby created shall have the powers and the authority conferred upon it by the said act. And any person, firm, or corporation, who shall violate any of the rules or regulations prescribed by the said board governing the manufacture, sale, barter, and possession of intoxicating liquors in the Territory of Alaska, or the qualifications of those engaging in the manufacture, sale, barter, and possession of such liquors in the said Territory, or the payment of license fees and excise taxes therefor, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished as provided in section 2072 of the Compiled Laws of Alaska." 48 U.S.C.A. § 293.

The congressional grant of specific authority to the legislature of Alaska to designate or create a "board or commission" to regulate the liquor traffic "clearly foreshadowed the erection of an independent body" [2] which could promulgate uniform licensing rules throughout the Territory. In 1937, however, the territorial body partially discarded this basic plan of central regulation adopted by Congress and enacted new legislation which allowed incorporated municipalities, by ordinance, to provide additional rules and regulations not inconsistent with the territorial Act. C. 78, Sessions Laws of Alaska 1937, now 35–4–18, A.C.L.A.1949 and 1957.[3]

The legislature of Alaska was specifically instructed by Congress that the power "to prescribe the qualifications of those who are to engage in the * * * sale, or possession of intoxicating liquors" should be exercised *either* by the legislature of Alaska *or* by a territorial "board or commission" designated or created by it. No other mode of regulation of the liquor traffic was authorized. Since the numerous municipal corporations of Alaska in no sense constitute the "board or commission" contemplated by Congress, the attempted subdelegation to them of concurrent licensing power violates both the letter of the Alaskan Organic Act, 48 U.S.C.A. § 67 et seq., and the clear intent of Congress. The legislature of Alaska was utterly without power to authorize municipal restrictive licensing, and that portion of the Anchorage General Code passed pursuant to the purported grant of power by the territorial legislature is void.

Plaintiffs are entitled to an injunction restraining the defendants from attempting to enforce the invalid licensing provisions of Ordinance 1031 against Woo. Counsel for plaintiff Woo may submit Findings of Fact, Conclusions of Law and Judgment against the defendants in conformity with this Memorandum of Decision.

2. Bordenelli v. United States, 9 Cir., 1956, 233 F.2d 120, 123.

3. Enactments of the legislature of Alaska in 1953 and 1957 first abolished and then re-established the Board of Liquor Control. The effect of this later legislation upon the validity of Woo's *Territorial* license, which was issued during the interregnum, need not be considered in determining the enforceability of the *City* licensing ordinance.